UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERTO MATA,                                    :
                                                 :
                        Plaintiff,               :    Case No. 22-cv-1461 (PKC)
                                                 :
        -against-                                :
                                                 :
AVIANCA, INC..                                   :
                                                 :
                        Defendant.               :
-------------------------------------------------------------X

## DECLARATION OF STEVEN SCHWARTZ, ESQ.

Steven A. Schwartz declares under penalty of perjury:

1.      I am an attorney admitted to practice in the State of New York and a Partner at the

firm Levidow, Levidow, & Oberman, P.C., which represents Roberto Mata in the above-

captioned action.

2.      I submit this declaration in response to the Court's Order to Show Cause dated

May 26, 2023 (Docket Entry ("DE") DE 33, the "Order").

3.      As detailed below and in the accompanying Memorandum of Law, I respectfully

request that the Court decline to impose sanctions against me, my law firm and my colleague,

Peter LoDuca. First and foremost, I want to deeply apologize to the Court for citing cases that

turned out to be fabricated and later submitting what I understood to be copies or excerpts of

those nonexistent cases. At the time that I performed the legal research in this case, I believed

that ChatGPT was a reliable search engine. I now know that was incorrect. However, it was

never my intention to mislead the Court and I regret not recognizing my error sooner.

4.      I also apologize for the incorrect date on the notarization portion of Mr. LoDuca's

April 25 affidavit (DE 29, the "April 25 Affidavit"). This was a typographical error for which I

was responsible. Notwithstanding that error, the document was properly notarized

contemporaneously with Mr. LoDuca signing it.  I recognize, however, that I should have paid

closer attention to the date before affixing my notary stamp to the document.

***Personal and Professional Background***

5.      I have been admitted to practice in the state of New York since 1992.  Prior to my

admission, I graduated from the State University of New York (SUNY) at Albany in 1988 and

received my Juris Doctor degree from New York Law School in 1991.  I have worked my entire

career for Levidow Levidow & Oberman P.C. (the "Firm").

6.      My primary area of practice is personal injury and workers compensation law,

where I represent clients before the New York State Workers Compensation Board in matters

under the New York Workers Compensation Law.  I also represent clients in disability

retirement and social security disability claims.  Because my practice has always been

exclusively in state court, I have never been admitted to the bar of this Court or any other federal

court.  In the more than thirty years that I have been practicing, I have never been disciplined or

sanctioned by any court or tribunal.

7.      In my prior affidavit sworn to on May 24, 2023, I described my involvement in

this case as well as the early procedural history.  I will not repeat any of that here and merely

incorporate it by reference. I will focus instead on my decision to use ChatGPT in responding to

Defendant's Motion to Dismiss.

***The Opposition to the Motion to Dismiss***

8.      After this case was removed, Defendant filed a motion to dismiss, arguing, among

other things, that this case was subject to a two year statute of limitations under the Montreal

Convention 1999 (the "Montreal Convention"), and that Mr. Mata had somehow filed the

Complaint too late.  As the partner who had been lead counsel on the case since its inception

almost three years before, I took responsibility for preparing a response to the motion.

2

9.     Our position on the motion would be that the claims were timely filed because either the Montreal Convention's shortened statute of limitations was inapplicable or, in the alternative, that any period of limitations was tolled by Avianca's bankruptcy.

10.     As discussed in our memorandum of law as well as the declaration of Thomas Corvino, the Firm practices primarily in New York state courts as well as New York administrative tribunals.  The Firm's primary tool for legal research is a program called Fastcase, which is an online legal research program made available to all lawyers at the Firm.

11.     Based on my experience using Fastcase, I understood that the Firm had access to the New York State database as well as to at least some federal cases.

12.     I first attempted to use Fastcase to perform legal research in this case, however it became apparent that I was not able to search the federal database.

### *My Use of ChatGPT*

13.     In an effort to find other relevant cases for our opposition, I decided to try and use ChatGPT to assist with legal research.

14.     I had never used ChatGPT for any professional purpose before this case.  I was familiar with the program from my college-aged children as well as the articles I had read about the potential benefits of artificial intelligence (AI) technology for the legal and business sectors.

15.     At the time I used ChatGPT for this case, I understood that it worked essentially like a highly sophisticated search engine where users could enter search queries and ChatGPT would provide answers in natural language based on publicly available information.

16.     I realize now that my understanding of how ChatGPT worked was wrong.  Had I understood what ChatGPT is or how it actually worked, I would have never used it to perform legal research.

17.     Based on my erroneous understanding of how ChatGPT worked, I used the program to try and find additional caselaw support for our arguments.

18.     I conducted the search in the same general manner I searched any legal research database. I first asked ChatGPT a broader question about tolling under the Montreal Convention and was provided with a general answer that appeared consistent with my pre-existing understanding of the law. I then began to ask ChatGPT to find cases in support of more specific principles applicable to this case, including the tolling of the Montreal Convention's statute of limitations as a result of Defendant's bankruptcy. Each time, ChatGPT provided me with an affirmative answer including case citations that appeared to be genuine. Attached as Exhibit A are copies of my chat history with ChatGPT when I was performing research for our opposition to the motion to dismiss.

19.     In connection with my research, I also asked ChatGPT to provide the actual cases it was citing, not just the summaries. Each time, ChatGPT provided me with what it described as a "brief excerpt" that was complete with a case caption, legal analysis, and other internal citations. I recognize in hindsight that I should have been more skeptical when ChatGPT did not provide the *full* case I requested. Nevertheless, given the other features of the "cases" it was providing, I attributed this to the program's effort to highlight the relevant language based on my search queries.

20.     As noted above, when I was entering these search queries, I was under the erroneous impression that ChatGPT was a type of search engine, not a piece of technology designed to converse with its users. I simply had no idea that ChatGPT was capable of fabricating entire case citations or judicial opinions, especially in a manner that appeared authentic.

21.     I therefore cited several of the cases that ChatGPT provided in our opposition to the motion to dismiss.

*The April 25 Affidavit*

22.     In response to Defendant's reply brief – which stated that defense counsel could not locate several of the cases cited in our opposition papers – the Court ordered Mr. LoDuca to file an affidavit annexing nine of the cases cited in our opposition.

23.     Mr. LoDuca sent me the Court's order the day it was issued.

24.     I was unable to find one of the cases (which was cited within another case that I had found on ChatGPT). Of the remaining eight cases, I obtained two of those cases from Fastcase. The remaining six, I obtained from ChatGPT (the "ChatGPT Cases").

25.     Similar to how I used ChatGPT when I was preparing the opposition papers, I asked ChatGPT to provide copies of the six ChatGPT Cases. ChatGPT provided me with what appeared to be partial versions of the six cases. Because I did not have another research database with access to the federal reporters available to me, I did not take these citations and obtain full copies of the cases from another source. (I realize now that I could have gone to a bar association library or colleague that had access to Westlaw and Lexis, but it did not occur to me at the time.) However, when I was responding, I still did not believe it was possible that the cases ChatGPT was providing were completely fabricated. I therefore attached the ChatGPT Cases to the April 25 Affidavit.

26.     Mr. LoDuca also asked me to notarize the April 25 Affidavit. To prepare the April 25 Affidavit, I used a Microsoft Word file of an affidavit from another case in order to avoid having to format a new document. The affidavit from the other case was notarized on January 7, 2011. Although I changed the day from "7" to "25" and the year from "2011" to "2023," I neglected to update the month from January to April. This was a pure typographical

5

error on my part. A true and correct copy of the draft of the April 25 Affidavit as it exists on our

Firm's computer system as well as a screenshot of the corresponding metadata showing it was

printed on April 25, 2023, is attached as Exhibit B.

27.     I printed the April 25 Affidavit in our offices on April 25, 2023. Mr. LoDuca

then came into my office and signed the affidavit in front of me and I affixed my notary stamp to

the bottom of the document. I then retained the original signature page after the document was

scanned for e-filing. I sincerely regret the typographical error on the April 25 Affidavit,

however, neither I nor Mr. LoDuca intended to mislead the Court or submit a false notarization.

***The First OSC and My Realization That the ChatGPT Cases Were Not Authentic***

28.     In response to the April 25 Affidavit as well as a letter from defense counsel

representing that it still could not find the ChatGPT Cases, this Court issued an Order to Show

Cause on May 4, 2023 directed to Mr. LoDuca (DE 31, the "First OSC"). The First OSC stated

that the Court could not find any record of six of the cases that we attached to the April 25

Affidavit (*i.e.* the ChatGPT Cases).

29.     When I read the First OSC, I realized that I must have made a serious error and

that there must be a major flaw with the search aspects of the ChatGPT program. I have since

come to realize, following the Order, that the program should not be used for legal research and

that it did not operate as a search engine at all, which was my original understanding of how it

worked.

30.     Before the First OSC, however, I still could not fathom that ChatGPT could

produce multiple fictitious cases, all of which had various indicia of reliability such as case

captions, the names of the judges from the correct locations, and detailed fact patterns and legal

analysis that sounded authentic. The First OSC caused me to have doubts. As a result, I asked

ChatGPT directly whether one of the cases it cited, "*Varghese v. China Southern Airlines Co.,*

*Ltd.*, 925 F.3d 1339 (11th Cir. 2009)," was a real case.  Based on what I was beginning to realize about ChatGPT, I highly suspected that it was not.  However, ChatGPT again responded that *Varghese* "does indeed exist" and even told me that it was available on Westlaw and LexisNexis, contrary to what the Court and defendant's counsel were saying.  This confirmed my suspicion that ChatGPT was not providing accurate information and was instead simply responding to language prompts without regard for the truth of the answers it was providing.  However, by this time the cases had already been cited in our opposition papers and provided to the Court.

31.     In an effort to be fully transparent, I provided an affidavit to Mr. LoDuca to submit along with his response to the First OSC.  In my affidavit, I made clear that I was solely responsible for the research and drafting of the opposition and that I used ChatGPT for some of the legal research.  I also apologized to the Court and reiterated that it was never my intention to mislead the Court.

***The Consequences of this Matter***

32.     As detailed above, I deeply regret my decision to use ChatGPT for legal research, and it is certainly not something I will ever do again.

33.     I recognize that if I was having trouble finding cases on the Firm's existing research platform, I should have either asked the Firm to obtain a more comprehensive subscription or used the research resources such as Westlaw and LexisNexis maintained by the law libraries at the local bar associations.

34.     Since submitting my response to the First OSC, I have already completed one continuing legal education course on technological competence and artificial intelligence.  The Firm is also organizing a training for all lawyers at the Firm on these same issues.

35.     In the past week, there has also been a significant amount of media coverage about this case in which I and my Firm have been publicly ridiculed.  This has been deeply

7

embarrassing on both a personal and professional level as these articles will be available for years to come.

36.     Although I recognize that my actions were wrong, they were not the result of any intentional effort to mislead or deceive the Court. I made a deeply regrettable mistake. This matter has been an eye-opening experience for me and I can assure the Court that I will never commit an error like this again.

37.     I therefore respectfully request that the Court decline to impose sanctions in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 6, 2023

Steven A. Schwartz