# EXHIBIT E

6/6/23, 5:00 PM  Case 1:22-cv-01461-PKC  Document 48-10  Filed 06/06/23  Page 2 of 20 A Man Sued Avianca Airline. His Lawyer Used ChatGPT. - The New York Times

*The New York Times*  https://www.nytimes.com/2023/05/27/nyregion/avianca-airline-lawsuit-chatgpt.html

# Here's What Happens When Your Lawyer Uses ChatGPT

A lawyer representing a man who sued an airline relied on artificial intelligence to help prepare a court filing. It did not go well.

 By Benjamin Weiser

May 27, 2023

The lawsuit began like so many others: A man named Roberto Mata sued the airline Avianca, saying he was injured when a metal serving cart struck his knee during a flight to Kennedy International Airport in New York.

When Avianca asked a Manhattan federal judge to toss out the case, Mr. Mata's lawyers vehemently objected, submitting a 10-page brief that cited more than half a dozen relevant court decisions. There was Martinez v. Delta Air Lines, Zicherman v. Korean Air Lines and, of course, Varghese v. China Southern Airlines, with its learned discussion of federal law and "the tolling effect of the automatic stay on a statute of limitations."

There was just one hitch: No one — not the airline's lawyers, not even the judge himself — could find the decisions or the quotations cited and summarized in the brief.

That was because ChatGPT had invented everything.

The lawyer who created the brief, Steven A. Schwartz of the firm Levidow, Levidow & Oberman, threw himself on the mercy of the court on Thursday, saying in an affidavit that he had used the artificial intelligence program to do his legal research — "a source that has revealed itself to be unreliable."

Mr. Schwartz, who has practiced law in New York for three decades, told Judge P. Kevin Castel that he had no intent to deceive the court or the airline. Mr. Schwartz said that he had never used ChatGPT, and "therefore was unaware of the possibility that its content could be false."

He had, he told Judge Castel, even asked the program to verify that the cases were real.

It had said yes.

Mr. Schwartz said he "greatly regrets" relying on ChatGPT "and will never do so in the future without absolute verification of its authenticity."

Judge Castel said in an order that he had been presented with "an unprecedented circumstance," a legal submission replete with "bogus judicial decisions, with bogus quotes and bogus internal citations." He ordered a hearing for June 8 to discuss potential sanctions.

As artificial intelligence sweeps the online world, it has conjured dystopian visions of computers replacing not only human interaction, but also human labor. The fear has been especially intense for knowledge workers, many of whom worry that their daily activities may not be as rarefied as the world thinks — but for which the world pays billable hours.

Stephen Gillers, a legal ethics professor at New York University School of Law, said the issue was particularly acute among lawyers, who have been debating the value and the dangers of A.I. software like ChatGPT, as well as the need to verify whatever information it provides.

"The discussion now among the bar is how to avoid exactly what this case describes," Mr. Gillers said. "You cannot just take the output and cut and paste it into your court filings."

The real-life case of Roberto Mata v. Avianca Inc. shows that white-collar professions may have at least a little time left before the robots take over.

It began when Mr. Mata was a passenger on Avianca Flight 670 from El Salvador to New York on Aug. 27, 2019, when an airline employee bonked him with the serving cart, according to the lawsuit. After Mr. Mata sued, the airline filed papers asking that the case be dismissed because the statute of limitations had expired.

In a brief filed in March, Mr. Mata's lawyers said the lawsuit should continue, bolstering their argument with references and quotes from the many court decisions that have since been debunked.

Soon, Avianca's lawyers wrote to Judge Castel, saying they were unable to find the cases that were cited in the brief.

When it came to Varghese v. China Southern Airlines, they said they had "not been able to locate this case by caption or citation, nor any case bearing any resemblance to it."

They pointed to a lengthy quote from the purported Varghese decision contained in the brief. "The undersigned has not been able to locate this quotation, nor anything like it in any case," Avianca's lawyers wrote.

Indeed, the lawyers added, the quotation, which came from Varghese itself, cited something called Zicherman v. Korean Air Lines Co. Ltd., an opinion purportedly handed down by the U.S. Court of Appeals for the 11th Circuit in 2008. They said they could not find that, either.

Judge Castel ordered Mr. Mata's attorneys to provide copies of the opinions referred to in their brief. The lawyers submitted a compendium of eight; in most cases, they listed the court and judges who issued them, the docket numbers and dates.

The copy of the supposed Varghese decision, for example, is six pages long and says it was written by a member of a three-judge panel of the 11th Circuit. But Avianca's lawyers told the judge that they could not find that opinion, or the others, on court dockets or legal databases.

Bart Banino, a lawyer for Avianca, said that his firm, Condon & Forsyth, specialized in aviation law and that its lawyers could tell the cases in the brief were not real. He added that they had an inkling a chatbot might have been involved.

Mr. Schwartz did not respond to a message seeking comment, nor did Peter LoDuca, another lawyer at the firm, whose name appeared on the brief.

Mr. LoDuca said in an affidavit this week that he did not conduct any of the research in question, and that he had "no reason to doubt the sincerity" of Mr. Schwartz's work or the authenticity of the opinions.

ChatGPT generates realistic responses by making guesses about which fragments of text should follow other sequences, based on a statistical model that has ingested billions of examples of text pulled from all over the internet. In Mr. Mata's case, the program appears to have discerned the labyrinthine framework of a written legal argument, but has populated it with names and facts from a bouillabaisse of existing cases.

Judge Castel, in his order calling for a hearing, suggested that he had made his own inquiry. He wrote that the clerk of the 11th Circuit had confirmed that the docket number printed on the purported Varghese opinion was connected to an entirely different case.

Calling the opinion "bogus," Judge Castel noted that it contained internal citations and quotes that, in turn, were nonexistent. He said that five of the other decisions submitted by Mr. Mata's lawyers also appeared to be fake.

On Thursday, Mr. Mata's lawyers offered affidavits containing their version of what had happened.

Mr. Schwartz wrote that he had originally filed Mr. Mata's lawsuit in state court, but after the airline had it transferred to Manhattan's federal court, where Mr. Schwartz is not admitted to practice, one of his colleagues, Mr. LoDuca, became the attorney of record. Mr. Schwartz said he had continued to do the legal research, in which Mr. LoDuca had no role.

Mr. Schwartz said that he had consulted ChatGPT "to supplement" his own work and that, "in consultation" with it, found and cited the half-dozen nonexistent cases. He said ChatGPT had provided reassurances.

"Is varghese a real case," he typed, according to a copy of the exchange that he submitted to the judge.

"Yes," the chatbot replied, offering a citation and adding that it "is a real case."

Mr. Schwartz dug deeper.

"What is your source," he wrote, according to the filing.

"I apologize for the confusion earlier," ChatGPT responded, offering a legal citation.

"Are the other cases you provided fake," Mr. Schwartz asked.

ChatGPT responded, "No, the other cases I provided are real and can be found in reputable legal databases."

But, alas, they could not be.

Sheelagh McNeil contributed research.

Benjamin Weiser is a reporter covering the Manhattan federal courts. He has long covered criminal justice, both as a beat and investigative reporter. Before joining The Times in 1997, he worked at The Washington Post.  @BenWeiserNYT

A version of this article appears in print on  , Section A, Page 1 of the New York edition with the headline: So, Have You Heard the One About the Lawyer Using A.I.?

ADVERTISEMENT

US & Canada

# ChatGPT: US lawyer admits using AI for case research

27 May



REUTERS

ChatGPT can answer questions using natural, human-like language and mimic other writing styles

3

ADVERTISEMENT

A judge said the court was faced with an "unprecedented circumstance" after a filing was found to reference example legal cases that did not exist.

The lawyer who used the tool told the court he was "unaware that its content could be false".

ChatGPT creates original text on request, but comes with warnings it can "produce inaccurate information".

The original case involved a man suing an airline over an alleged personal injury. His legal team submitted a brief that cited several previous court cases in an attempt to prove, using precedent, why the case should move forward.

But the airline's lawyers later wrote to the judge to say they could not find several of the cases that were referenced in the brief.

"Six of the submitted cases appear to be bogus judicial decisions with bogus quotes and bogus internal citations," Judge Castel wrote in an order demanding the man's legal team explain itself.

Over the course of several filings, it emerged that the research had not been prepared by Peter LoDuca, the lawyer for the plaintiff, but by a colleague of his at the same law firm. Steven A Schwartz, who has been an attorney for more than 30 years, used ChatGPT to look for similar previous cases.

In his written statement, Mr Schwartz clarified that Mr LoDuca had not been part of the research and had no knowledge of how it had been carried out.

Mr Schwartz added that he "greatly regrets" relying on the chatbot, which he said he had never used for legal research before and was "unaware that its content could be false".

He has vowed to never use AI to "supplement" his legal research in future "without absolute verification of its authenticity".

- **ChatGPT chatbot banned in Italy**
- **'Google killer' ChatGPT sparks AI chatbot race**
- **Can you pass your degree using ChatGPT?**

4

ADVERTISEMENT

ChatGPT responds that yes, it is - prompting "S" to ask: "What is your source".

After "double checking", ChatGPT responds again that the case is real and can be found on legal reference databases such as LexisNexis and Westlaw.

It says that the other cases it has provided to Mr Schwartz are also real.

Both lawyers, who work for the firm Levidow, Levidow & Oberman, have been ordered to explain why they should not be disciplined at an 8 June hearing.

Millions of people have used ChatGPT since it launched in November 2022.

It can answer questions in natural, human-like language and it can also mimic other writing styles. It uses the internet as it was in 2021 as its database.

There have been concerns over the potential risks of artificial intelligence (AI), including the potential spread of misinformation and bias.

## Related Topics

Artificial intelligence     United States

## More on this story



AudioLive TV

| Markets → | | | Fear & Greed Index → | Latest Market News → |
|---|---|---|---|---|
| DOW | 33,562.86 | 0.59% ▼ | | US regulator accuses Binance of running an illegal exchange |
| S&P 500 | 4,273.79 | 0.20% ▼ |  73 | Microsoft Outlook users hit with brief Monday morning outage |
| NASDAQ | 13,229.43 | 0.09% ▼ | | With Robert F. Kennedy Jr. interview, Musk again uses Twitter to promote candidates aligned with his views |

# Lawyer apologizes for fake court citations from ChatGPT

By Ramishah Maruf, CNN
Updated 3:28 PM EDT, Sun May 28, 2023



Dovrat: ChatGPT will change the way we do business

03:11 - Source: CNN

**New York (CNN)** — The meteoric rise of ChatGPT is shaking up multiple industries – including law, as one attorney recently found out.

**6**

CNN — RELATED — ✕

Roberto Mata sued Avianca airlines for injuries he says he sustained from a serving cart while on the airline in 2019, claiming negligence by an employee. Steven Schwartz, an attorney with Levidow, Levidow & Oberman and licensed in New York for over three decades, handled Mata's representation.

But at least six of the submitted cases by Schwartz as research for a brief "appear to be bogus judicial decisions with bogus quotes and bogus internal citations," said Judge Kevin Castel of the Southern District of New York in an order.

The fake cases source? ChatGPT.

"The court is presented with an unprecedented circumstance," Castel wrote in a May 4 order.

Among the purported cases: Varghese v. China South Airlines, Martinez v. Delta Airlines, Shaboon v. EgyptAir, Petersen v. Iran Air, Miller v. United Airlines, and Estate of Durden v. KLM Royal Dutch Airlines, all of which did not appear to exist to either the judge or defense, the filing said.

Schwartz, in an affidavit, said that he had never used ChatGPT as a legal research source prior to this case and, therefore, "was unaware of the possibility that its content could be false." He accepted responsibility for not confirming the chatbot's sources.

Schwartz is now facing a sanctions hearing on June 8.

In an affidavit this week, he said he "greatly regrets having utilized generative artificial intelligence to supplement the legal research performed herein and will never do so in the future without absolute verification of its authenticity."

In late April, Avianca's lawyers from Condon & Forsyth penned a letter to Castel questioning the authenticity of the cases.

In an affidavit filed Thursday, fellow attorney Peter Loduca said he "had no reason to doubt the sincerity" of Schwartz's research and that he had no role in the research.

Schwartz was ordered to show cause why he shouldn't be sanctioned "for the use of a false and fraudulent notarization," in an affidavit filed on April 25.

Schwart's affidavit Wednesday contained screenshots of the attorney appearing to confirm the authenticity of the case with ChatGPT.

"is varghese a real case," Schwartz asked the chatbot.

"Yes," ChatGPT doubled down, it "is a real case."

Schwartz then asked for its source. The chatbot again claimed the false case was real.

"I apologize for the confusion earlier," ChatGPT replied. "Upon double-checking, I found the case Varghese v. China Southern Airlines Co. Ltd., 925 F.3d 1339 (11th Cir. 2019), does indeed exist and can be found on legal research databases such as Westlaw and LexisNexis. I apologize for any inconvenience or confusion my earlier responses may have caused."

When Schwartz asked the chatbot if any other cases were fake, ChatGPT replied the other cases "are real" and could be found on "reputable legal databases."

CNN has reached out to Schwartz and Loduca for comment.

**MORE FROM CNN BUSINESS**



Former NBCU exec Linda Yaccarino prepares to take over Twitter CEO role from Elon Musk



Spotify cuts 200 jobs within its podcasting unit

**CNN BUSINESS VIDEOS**



'We are watching': How a satellite company helps expose scenes from the war in Ukraine



Creating greener shipping fuel

8

**FORBES** > **INNOVATION** > **AI**

# Lawyers Getting Tripped Up By Generative AI Such As ChatGPT But Who Really Is To Blame, Asks AI Ethics And AI Law

**Lance Eliot** Contributor ⓘ

*Dr. Lance B. Eliot is a world-renowned expert on Artificial Intelligence (AI) and Machine Learning...*

Follow

💬 0

May 29, 2023, 08:00am EDT

Listen to article  44 minutes



Lawyers and others need to be mindful when using generative AI and be on the watch, including ... [+]  GETTY

9

In today's column, I'll be examining an emerging newsworthy item about generative AI that got quite a splash in the mainstream media and also garnered rapt attention on social media. The circumstance involves two lawyers in a law firm that relied upon the use of the widely and wildly popular generative AI app ChatGPT and seemed to have gotten themselves legally into rather hot water for doing so.

The aspect that this has happened to lawyers got keen attention and banner headlines.

The situation highlights that yes, even lawyers ought to be careful when using generative AI, making sure to double and triple-check whatever the AI app indicates (for my ongoing and extensive coverage of AI and the law, see the link here and the link here). There are handy lessons to be learned from this occurrence and I will point out key insights as we go along herein. I'd like to also emphasize that the loud clarion bell ringing that you need to be thoughtful when using generative AI is not limited solely to the ranks of attorneys. For example, I recently explored how medical doctors can get themselves into hot water and potentially confront medical malpractice difficulties if they improperly utilize generative AI, see my coverage at the link here.

You see, anyone that opts to use generative AI for nearly any substantive pursuit is asking for trouble if they fail to heed various crucial considerations when doing so. It is foolhardy to use generative AI as though it is a magical silver bullet or otherwise assume that it is beyond reproach. Just like any form of an online tool, you need to use generative AI with sensibility and a tad of awareness of what works and what doesn't work. Rushing toward generative AI to presumably do your hard work for you is replete

10

with all manner of trials and tribulations, some of which can have serious and sobering consequences.

In terms of this story of the two lawyers, some outsized bellowing pundits have already unfortunately gone overboard and declared that this one instance showcases that lawyers should entirely be averting the use of generative AI. Period, full stop. That is the proverbial oddish thinking akin to tossing the baby out with the bathwater (an old adage, perhaps nearing retirement).

I've covered extensively that lawyers can productively make use of generative AI and that when doing so they need to be mindful of various limitations and gotchas that can arise, as discussed at the link here and the link here, just to name a few. Tradeoffs exist as to when to best use generative AI. Attorneys that decide categorically and without due diligence to completely avoid generative AI are doing themselves a disservice and, it can be argued too, they are potentially undercutting the work that they are doing in service of their clients (for more on this, see my analysis at the link here).

MORE FROM FORBES ADVISOR

### Best Travel Insurance Companies

By Amy Danise Editor

### Best Covid-19 Travel Insurance Plans

By Amy Danise Editor

There is the other end of the extreme that also is equally unsettling. Any attorney that fully dives headfirst into generative AI can find themselves striking the shallow end of the pool if they aren't savvy about what generative AI can and cannot do. When I refer to generative AI, I am speaking of a range of such AI apps including

11

ChatGPT, GPT-4, Bard (Google), and many others. This particular news story involved ChatGPT but you should keep in mind that all generative AI apps have similar pitfalls and traps that need to be cautiously observed and mindfully contended with.

**Forbes Daily: Get our best stories, exclusive reporting and essential analysis of the day's news in your inbox every weekday.**

| Email address | Sign Up |

By signing up, you accept and agree to our Terms of Service (including the class action waiver and arbitration provisions), and Privacy Statement.

The aim these days of using generative AI invokes the classic Goldilocks balancing act. You ought to use generative AI in a semblance of being neither too cold nor too hot. Do not fall madly in love with using generative AI and forsake your common sense and aura of cautiousness. In addition, do not run away in an abject panic or demonic fear of generative AI, since rejecting these AI apps on illiteracy alone is markedly imprudent.

There are benefits and costs associated with using generative AI. When I mention costs, I am talking not merely about financial costs per se of paying to use such apps. I am referring to improperly or inappropriately using generative AI and finding yourself in a dour posture accordingly. That being said, do not toss aside the benefits simply due to the realization that costs also exist. Properly manage the costs and relish the benefits.

All in all, a suitable middle ground is readily findable, practical, and beneficial when it comes to using generative AI.

With that overall context, I will first bring you up-to-speed about the two lawyers and the legal drama afoot. I will do so in a

12

somewhat rapid fashion and urge those of devout interest to pursue the details posted online at various legal-oriented forums. I aim to provide enough of a picture of what they have gotten themselves into to illuminate what the blaring headlines are all about and to set the stage for identifying useful lessons learned.

The situation is still brewing and I'll likely be doing an update in a future column to let you know how things turned out, thus be on the look for additional coverage at a later date.

Okay, let's unpack the legal tale of woe.

**Generative AI Use Gone Legally Awry**

Here's the deal.

An existing civil case (not a criminal case, thankfully), was underway and the attorneys of each respective side were battling each other via the usual course of court filings. Nothing out of the ordinary in that regard. As you know, we have an adversarial legal system whereby the attorneys on either side of a disputed matter attempt to make their legal case and prevail over the other party. The judge and the court provide a venue and judicial function for these systematic adversarial exchanges.

Attorneys are held to a legal obligation that they are to be truthful when conveying matters to the judge and the court. If a lawyer fails to abide by the truth-telling precept, they can get into a legally ominous sticky wicket, as it were.

In a nutshell, an attorney for one of the sides of the case formally filed a legal document citing several legal cases that appeared to pertain to the matter at hand. This is commonly done to bolster your side of the case. An attorney seeks to make note of prior legal

**13**

cases that will support their position or advocate the case favorably for their proffered legal arguments.

I'll give you a hint of what next transpired. Turns out that the attorney that cited the legal cases had apparently relied upon a fellow attorney in his office to do the legal research on his behalf. This fellow attorney had apparently used generative AI, specifically ChatGPT, as part of the legal research endeavor. When using ChatGPT, the fellow attorney had seemingly asked ChatGPT to identify pertinent legal cases, which it supposedly did, and those then were encompassed into the legal filing.

The line of action then is as follows. An attorney asks his fellow attorney to help on a case. The fellow attorney opts to use ChatGPT. After using ChatGPT, the fellow attorney writes up verbiage and includes the proclaimed legal cases. This is handed over to the requesting attorney. Finally, this attorney then presumably reviews the material and proceeds to formally file the content with the court.

One would hope and expect that any attorney, especially seasoned attorneys, would double and possibly triple-check any court filing that they intend to formally submit. I'll say more about this in a moment.

Now then, the odds are pretty high that an attorney on the opposing side of the case is going to either know the legal cases that are being cited, or at least carefully scrutinize those cited legal cases if they aren't already familiar with them. The goal is to try and convince the court and the judge that the cited cases are either irrelevant or immaterial to the case, or possibly turn around the cases and make a legal argument that those legal cases actually support your position and undercut the other side. Etc.

14

This is the usual and daily legal battle of wits.

As I will soon indicate, the legal cases cited were questioned as to authenticity by the opposing side due to not being able to find the legal cases on any bona fide database of court proceedings. That's a big problem for the side that cited those cases. They have a veritable egg on their face if indeed the cited cases do not exist.

You would almost naturally assume that after being alerted that the cited cases were of questionable authenticity, the two lawyers would have realized that maybe a slipup had occurred. The course of action would be to quickly clarify and try to set the record straight. Either the cases do exist and there is substantive proof of this existence, or they don't exist and the aim would be to politely and with a prayer retract them from your legal posturing (trying to keep your head low, if possible).

I am about to share with you the zinger of this story.

The reply by the two attorneys was that the cited legal cases do exist and they included snapshots of the cases to bolster their assertions thereof.

How did they come to this proof?

Apparently, they went back to ChatGPT and asked the generative AI whether the cited legal cases were legitimate. The result from ChatGPT was that the AI app seemingly reaffirmed that the cases do exist. This was further reinforced by asking ChatGPT to give textual snapshots of the cases.

Once again, the opposing side dearly questioned that presumed double-down. The court also opted to try and find the claimed legal cases and could not find them. At that juncture, the court formally requested that the attorneys explain how they came upon these

15

seemingly phantom cases. It is conceivable that maybe, somehow, curiously, the legal cases did exist but the court nor the attorneys of the other side could find them.

That's quite an unlikely scenario. The higher odds were that the cited cases didn't exist.

Lo and behold, the rest of the story then came out, namely that ChatGPT had been used and those attorneys were regretful of having relied upon the generative AI app. A hearing is presently scheduled for the judge to decide what if any repercussions there will be for the attorneys having submitted what turns out to be fictitious or made-up cited legal cases.

A fascinating and weaving tale of legal anguish is now up in the air. As I mentioned earlier, I'll be keeping tabs on the matter and will be providing further coverage in my column.

I'd bet that you are keenly curious about seeing some of the content that got the attorneys into this bit of legal double trouble. To satisfy your appetite for innate curiosity, I'll provide a few excerpts of the case. You can find the set of documents publicly available online, they are part of Civil Action No. 22-CV-1461 (PKC) in the U.S. District Court, Southern District of New York (S.D.N.Y).

Let's do this chronologically to see how things evolved and unraveled.

I will focus on a cited case that was claimed to be the legal proceedings of "Varghese v. China Southern Airlines" and that supposedly within that case there was an additional case known as "Zicherman v. Korean Air Lines". Other cited cases were also mentioned but I'll just keep things short here by looking at the Varghese and Zicherman claimed cases.

**16**

Our tale gets underway with a filing of March 1, 2023.

Prepare yourself by sitting in a comfy chair and having a glass of wine at the ready.

Here we go.

**March 1, 2023: Initial cited cases that got the ball rolling**

Here is an excerpt from a formal document entitled "Affirmation In Opposition", filed on March 1, 2023:

- "The United States Court of Appeals for the Eleventh Circuit specifically addresses the effect of a bankruptcy stay under the Montreal Convention in the case of Varghese v. China Southern Airlines Co. Ltd., 925 F.3d 1339 (11th Cir. 2019), stating "Appellants argue that the district court erred in dismissing their claims as untimely…"

- "… See Zicherman v. Korean Air Lines Co., Ltd., 516 F.3d 1237, 1254 (11th Circ. 2008)."

Notice that the above-quoted excerpt indicates that there was a supposed legal case entailing Varghese and another case entailing Zicherman.

Let's next see what the opposing side had to say after taking a look at that filing.

**March 15, 2023: Opposing side questions what is going on about some of the cited cases**

An excerpt from a formal document entitled "Reply Memorandum Of Law In Further Support Of Defendant's Motion To Dismiss Plaintiff's Verified Complaint", filed March 15, 2023, says this:

17

- "Although Plaintiff ostensibly cites to a variety of cases in opposition to this motion, the undersigned has been unable to locate most of the case law cited in Plaintiff's Affirmation in Opposition, and the few cases which the undersigned has been able to locate do not stand for the propositions for which they are cited. For these reasons, Avianca respectfully submits that the Verified Complaint should be dismissed as untimely."

I trust that you can see that the opposing side has raised a red flag.

The cited legal cases were unable to be located, which is legal politeness to suggest that the cases were possibly fictional or something is ostensibly amiss. For the legal cases that could be found, the assertion is that the cases didn't cover what the filing indicated they covered.

Alarm bells ought to be buzzing.

**April 25, 2023: Doubles down by replying that the cases do exist**

This is where the reply comes that the cases do exist. We know now in hindsight that they had apparently gone back to ChatGPT and relied upon ChatGPT to reaffirm that the legal cases existed, including that ChatGPT generated made-up textual snapshots.

The formal document as an Affidavit, dated April 25, 2023, says this:

- "1. That I am an attorney associated with the law firm of… and do hereby declare that the foregoing is true and correct."

- "2. That pursuant to Court Order I have annexed copies of the following cases previously cited: "Varghese v. China

18

> Southern Airlines Co., Ltd., 925 F.3d 1339 (11th Cir. 2019, [Others...]"

And included with this was for example a document asserting that the Varghese case does purportedly exist, as evidenced by this textual snapshot:

- "United States Court of Appeals, Eleventh Circuit. Susan Varghese, individual and as personal representative of the Estate of George Scaria Varghese, deceased, Plaintiff-Appellant v. China Southern Airlines Co Ltd., Defendant-Appellee, No. 18-13694"

- "Susan Varghese, individually and as a personal representative of the Estate of George Scaria Varghese, deceased, appeals the district court's dismissal of her wrongful death claim against China Southern Airlines Co. Ltd. ("China Southern") under the Montreal Convention. Because the statute of limitations was tolled by the automatic stay of bankruptcy proceedings and the complaint was timely filed, we reverse and remand for further proceedings."

As a reminder, this is apparently a textual snapshot that was concocted by ChatGPT.

Deeper and deeper into the abyss we go.

**April 26, 2023: Opposing side letter says these still aren't able to be found**

This next reply was done on a quick turnaround basis, and here's an excerpt from the letter that contained the reply:

19