

CereBel INTELLIGENCE
750 Lexington Avenue, 9th Flr
New York NY 10022
(631) 506-8464
ai@cerebel.law

June 7, 2023

Honorable P. Kevin Castel
United States District Court Southern District of New York
500 Pearl Street
New York, New York 10007

**RE: Roberto Mata v. Avianca, Inc, No.: 22-cv-1461 (PKC)**

Dear Judge Castel,

      I write to request leave to file the accompanying Proposed Amicus Curiae Brief ("Proposed Brief") in the above captioned matter to support the Court's consideration of its May 26, 2023 Order to Show Cause (D.E. #33, the "OSC") at the hearing scheduled on June 8, 2023 why attorneys and a law firm (the "Subject Attorneys") ought not be sanctioned for purported unintended errors arising from reliance on the use of a generative artificial intelligence software application to conduct legal research pursuant to Rule 11(b)(2) & (c) and only incidentally to support consideration of sanctions for the same pursuant to Fed. R. Civ. P., (2) 28 U.S.C. § 1927.

      Since the public release of the revolutionary Chat GPT– the software application to which the Subject Attorneys have attributed their error in a preliminary submission (D.E. #32, Att. 1)– only six months ago, just three months before the filing of the erroneous citations in the matter, I have developed expertise applying the associated technology platform ("GPT Platform") to legal analysis as founder of New York County based CereBel Legal Intelligence, an AI software company that provides litigation support services to attorneys, including personal injury plaintiff and defense attorneys practicing in the Southern District of New York.

      Notwithstanding national concerns ranging from student plagiarism, voter deception, vast job displacement, and apocalyptic robot takeover of humanity[1], Chat GPT is reported to be the most rapidly adopted application in the thirty-year history of the consumer internet (reaching 100 million monthly users in two months[2]) and, along with similar software provided by others, has quickly captivated legal practitioners[3]. Across all occupations and sectors, artificial intelligence is widely expected to drive the fourth industrial revolution[4] and be vital to national competitiveness and the global economy. As a result, this sanctions matter has received

---

[1] "Oversight of A.I.: Rules for Artificial Intelligence", United States Senate Subcommittee on Privacy, Technology, and the Law, May 16, 2023 (Transcript)
[2] "ChatGPT is growing faster than TikTok," February 1, 2023
[3] "End of the Billable Hour? Law Firms Get On Board With Artificial Intelligence. Lawyers start to use GPT-4 technology to do legal research, draft documents and analyze contracts," *Wall Street Journal*, May 11th, 2023 and "A.I. Is Coming for Lawyers, Again. Previous advances in A.I. inspired predictions that the law was the lucrative profession most likely to suffer job losses. It didn't happen. Is this time different?," *New York Times*, April 10, 2023
[4] "The Fourth Industrial Revolution: what it means, how to respond," World Economic Forum, January 4, 2016

considerable coverage by national media including the New York Times, CNN, and many influential online legal trade and technology publications.

Given the notoriety of this matter, I am concerned about how the District's first impression of evidence produced by generative AI will impact the further development and adoption of this innovation for public benefit.  This is especially so since Rule 11(c)(4) enables the Court to issue sanctions that may serve to "deter… comparable conduct by others similarly situated."  As in RE: Pennie & Edmonds LLP,  No. 02-7177, 2003 WL 1191197 (2d Cir. Mar. 14, 2003) wherein the majority opined that severe Rule 11 sanction regimes can have the effect of deterring legitimate actions by counsel in the interest of clients "out of apprehension that their conduct will erroneously be deemed improper." and too lenient regimes can "embolden them to [take] improper [actions] on behalf of clients" (in that case, to "make improper submission"), here a harsh regime could have the effect of dissuading attorneys from adopting technologies that promise to increase the quality and efficiency of counsel provided to clients.

Indeed a standing order issued on the first business day after the OSC by Judge Brantley Starr (N.D. Tex.) mandating appearances in his court be accompanied by negative certifications regarding use of generative artificial intelligence, but no such certifications regarding use of any other technology that could be used irresponsibly, has already been widely misreported[5] as a prohibition on use of this powerful technology.  The Proposed Brief describes how this mandate arbitrarily discriminates against certain sectors of the legal technology industry, dissuades innovation while unfairly favoring entrenched "print reporters [and] traditional legal databases," and is detrimental to the public and the bar.  Like possible sanctions, the goals of Honorable Starr's order could be accomplished less prejudicially by simply mandating affected parties acknowledge what has always been true, that no portion of any filing should be submitted without being checked for accuracy by a human being and no citation should be included without being personally and fully reviewed regardless of what, if any, technology tool is used to compose them.

In order to determine the reasonableness of the Subject Attorneys errant use of the software alleged to be responsible for the submission errors and, if deemed necessary, craft sanctions and/or directives to "deter comparable conduct by others similarly situated" the Court may find it helpful to understand in greater detail how this complex and novel software works, how it was presented and made available for public use, and what it is and is not capable of doing.  The Proposed Brief provides timely and useful information to assist the Court:

a) contextual the potential reasonableness of the Subject Attorney's actions in light of market messaging and the software's user experience:
b) evaluate evidence attributed to the subject software application;
c) fathom the full capabilities & limitations of the technology when used responsibly; and
d) calibrate potential sanctions and any possible directives that specifically mention generative AI against public interests.

---

[5] E.g. "No ChatGPT in my court," "Texas judge bans legal filings that rely on AI-generated content," "Texas judge bans filings solely created by AI after ChatGPT made up cases," *Techcrunch*, *The Hill*, *CBS News*, May 30, 2023, June 2, 2023, and June 2, 2023 respectively.

It is well established that "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." (Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1249 n.34 (11th Cir. 2006.)  The role of an amicus is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 940 F.2d 792, 808 (3d Cir. 1991).  Courts permit briefing from an amicus when: (1) a party is not represented competently; (2) the amicus has an interest that may be affected by the decision but does not entitle the amicus to intervene; or (3) the amicus has unique information or a new perspective that can help the court beyond what the parties can provide. Ryan v. Commodity Futures Trading Comm'n, 125 F.3d 1062, 1064 (7th Cir. 1997), Best Payphones, Inc. v. Dobrin, 410 F. Supp. 3d 457, 465 n.3 (E.D.N.Y. 2019).  "Although plaintiffs are represented by competent counsel and some of the arguments proffered in the proposed amicus brief are duplicative of those raised by plaintiffs, the court nevertheless finds the amici's perspective to be helpful," C & A Carbone v. Cty. of Rockland, 2014 WL 1202699, at *3 (S.D.N.Y. March 24, 2014.)  Even a more restrictive view that "[an] amicus brief should [only] be allowed when…. the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." (Cobell v. Norton, 246 F. Supp. 2d 59, 62-63 (D.D.C. 2003.) would favor the appearance of the proposed amicus here.

I notified all parties on June 6th by telephone and email of my intention to submit this motion.  Should the Court grant leave to file the Proposed Brief, I would make myself available at the hearing scheduled on June 8, 2023 to provide whatever assistance my expertise might allow and, if further granted, make argument in support of similarly situated parties with interest in the shape and extent of what could be precedential sanctions related to this important emerging technology.

Respectfully submitted,

Gregory C. Belmont
Pro se
On behalf of myself and CereBel Legal Intelligence

CC:     All counsel via email